**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES DIPIERRO<br><br>        Plaintiff,<br><br>  v.<br><br>STATE UNIVERSITY OF NEW YORK AT STONY BROOK; STONY BROOK UNIVERSITY SCHOOL OF MEDICINE; STONY BROOK OCCUPATIONAL MEDICINE, UNIVERSITY FACULTY PRACTICE CORPORATION; and STONY BROOK FAMILY AND PREVENTIVE MEDICINE SERVICES, UNIVERSITY FACULTY PRACTICE CORPORATION,<br><br>        Defendants. | Docket No. 17 Civ. 3544<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charles diPierro, M.D., by and through his attorneys at the Filosa Law Firm, PLLC, as and for his Complaint in this action against Defendants State University of New York at Stony Brook ("Stony Brook" or the "University"), Stony Brook University School of Medicine ("School of Medicine"), Stony Brook Occupational Medicine, University Faculty Practice Corporation ("Stony Brook Occupational Medicine"), and Stony Brook Family and Preventive Medicine Services, University Faculty Practice Corporation ("Stony Brook Family and Preventive Services") (collectively, "Defendants") alleges upon personal knowledge and upon information and belief as to other matters as follows:

**PRELIMINARY STATEMENT**

1. This is an action seeking declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including, but not limited to, Defendants' termination of Plaintiff's employment with Defendants

in retaliation for his exercise of rights protected by the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA").

2. Defendants' unlawful conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff's federally-protected rights, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA.

4. Venue is proper in the district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

5. Plaintiff Charles diPierro, M.D. is a former employee of Defendants and resides in Suffolk County, New York. Dr. diPierro was employed by Defendants as a Clinical Assistant Professor in the School of Medicine from July 18, 2014 through August 19, 2015. At all relevant times, Plaintiff met the definition of "employee" under all applicable statutes.

6. Defendant State University of New York at Stony Brook is a public university and part of the State University of New York ("SUNY") system. SUNY is a corporation organized and existing under the laws of the State of New York and at all relevant times, Defendant Stony Brook met the definition of an "employer" under the FMLA.

7. Defendant Stony Brook University School of Medicine is Defendant Stony Brook University's medical school and provides graduate and post-graduate education to students

enrolled at the University and, at all relevant times, the School of Medicine met the definition of an "employer" under the FMLA.

8. Stony Brook Occupational Medicine, University Faculty Practice Corporation is an inactive domestic not-for-profit corporation, organized and existing under the laws of the State of New York. Upon information and belief, at all relevant times, Stony Brook Occupational Medicine met the definition of an "employer" under the FMLA and is a predecessor in interest to Defendant Stony Brook Family and Preventive Medicine.

9. Stony Brook Family and Preventive Medicine Services, University Faculty Practice Corporation is an active domestic not-for-profit corporation, organized and existing under the laws of the State of New York. Upon information and belief, Stony Brook Family and Preventive Medicine is the successor in interest to Defendant Stony Brook Occupational Medicine, and as a result, meets the definition of an "employer" under the FMLA and is liable for the below conduct attributed to Defendant Stony Brook Occupational Medicine.

## FACTUAL ALLEGATIONS

**Defendants' Jointly Employed Plaintiff and/or Operated as a Single Enterprise**

10. At all relevant times, Defendants met the definition of an "employer" and a "covered employer" under the FMLA and Defendants either jointly employed Plaintiff in connection with his employment with Defendants or Defendants operated as a single enterprise. As a result, the conduct alleged below that is ascribed to "Defendants" applies to each Defendant jointly and severally.

11. The dean of the School of Medicine officially appointed Plaintiff to his position with Defendants. This appointment was based on the recommendation of Dr. Iris Granek, Chair of the School of Medicine's Department of Preventive Medicine (the "Department").

12. Dr. Granek signed the letter recommending Plaintiff's appointment in her capacity as Chair of the Department and as President of Stony Brook Preventive Medicine Services

13. Plaintiff received an IRS Form W-2 and paystubs that listed Stony Brook Occupational Medicine as his employer and, according to the website site for the Internal Revenue Service, the Employer Identification Number listed on the Form W-2 is assigned to an entity doing business as "Stony Brook Preventive Medicine."

14. Upon information and belief, Defendant Stony Brook Family and Preventive Services is the successor of both Stony Brook Occupational Medicine and another separate, but related entity formerly known as Stony Brook Preventive Medicine Services, University Faculty Practice Corporation.

15. As an employee in the Department providing clinical services, Plaintiff was employed by both the University/School of Medicine and also Stony Brook Occupational Medicine.

16. Upon information and belief, Defendants divided responsibility for the payment of Plaintiff's wages between Stony Brook Occupational Medicine and the University/School of Medicine, with Defendant Stony Brook Occupational Medicine paying approximately 20% of Plaintiff's salary and the University/School of Medicine covering the remaining 80%.

**Plaintiff's Employment with Defendants**

17. From July 2012 through June 2014, Dr. diPierro was a resident in the School of Medicine's Residency Program in General Preventive Medicine.

18. In or around July 2014, the School of Medicine of Medicine hired Dr. diPierro and appointed him to serve as Clinical Assistant Professor of Preventive Medicine in the Department.

19. Dr. diPierro's position was a part-time position (0.8 FTE) and was a one-year appointment through July 17, 2015, but could be renewed by Dr. diPierro and Defendants for additional one-year terms.

20. In this position, Dr. diPierro was primarily responsible for providing clinical services through Defendants' University Hospital Employee Health and Wellness Service and Occupational & Environmental Medicine practice group.

21. In this position, Dr. diPierro was also required to give didactic lectures, lead seminars, and provide clinical instruction to medical students and resident physicians working in the University's hospital.

22. Dr. diPierro's appointment was set to expire in July 2015, but he had every expectation that the School of Medicine would renew his appointment for another one-year term. Indeed, the School of Medicine had scheduled Dr. diPierro for a number of assignments that were scheduled for as late as one year after July 2015 – presumably, the Department would not have done so unless Defendants were planning to renew Dr. diPierro's contract for at least another academic year.

**Dr. diPierro's Request for FMLA Leave**

23. On June 5, 2015, Dr. diPierro requested that he be able to use 12 weeks of eligible FMLA leave starting on July 5, 2015 and continuing through September 26, 2015 in order to care for his mother. At the time Dr. diPierro's mother was suffering from a number of health issues, many of which required hospitalization, and Dr. diPierro was her primary medical

decisionmaker. As a result, Dr. diPierro's request for medical leave to care for his mother was a qualifying reason under the FMLA.

24. Defendant's Human Resources department approved Dr. diPierro's request for FMLA leave on or around June 12, 2015 and, upon information and belief, notified the Department shortly thereafter, and definitely by June 15, 2015 (when Dr. diPierro was copied on an email from Human Resources to Dr. Granek about the dates of Dr. diPierro's FMLA leave).

25. On June 30, 2015, less than three weeks after his FMLA leave had been approved, Dr. diPierro was called into a meeting with Dr. Granek and notified that the Department would not be renewing his contract and that his employment would end on August 19, 2015 (the collective bargaining agreement between the University and the medical faculty's union required a 45-day notice for any decision not to renew Dr. diPierro's employment).

26. Dr. Granek did not provide any explanation for the Department's decision not to renew Dr. diPierro's contract and terminate Dr. diPierro's employment with Defendants.

27. Prior to this meeting, no one from the Department had given Dr. diPierro any indication that Defendants would not be renewing Dr. diPierro's employment. To the contrary, the conduct of Department employees led Dr. diPierro to believe that his contract would be renewed for another year. The following are examples of Department conduct that led Dr. diPierro to this conclusion:

    a. The Department had scheduled Dr. diPierro for clinical assignments as far in advance as July 2016.

    b. Defendants renewed Dr. diPierro's malpractice insurance in early June 2015 to be effective for the year following July 1, 2015.

      c.      The Department invited Dr. diPierro to attend a July 8, 2015 event for Department faculty and asked him to provide a photo and biographical information for a faculty handbook that the Department was going to distribute at the event.

      d.      The Chair of the Department (Dr. Granek) scheduled Dr. diPierro to attend internal Occupational Medicine provider meetings in August 2015, November 2015, and February 2016;

      e.      Dr. Granek also approved Dr. diPierro's attendance at medical conferences through April 2016 and had previously approved Dr. diPierro's attendance at a July 29-31, 2015 (which included approval of Dr. diPierro's request for reimbursement of the cost of the conference), but revoked that approval for reimbursement after Defendants notified Dr. diPierro that Defendants were not renewing Dr. diPierro's contract for another year; and

      f.      The Department failed to provide Dr. diPierro with 45 days' notice of the non-renewal of his contract – had the Department intended not to renew Dr. diPierro's contract prior to his FMLA leave request in June 2015, the Department would have presumably given him the required notice at the end of May 2015.

28.      The above conduct demonstrates that, prior to Dr. diPierro's request for FMLA leave, the Department intended to extend Dr. diPierro's employment contract and that Dr. diPierro would continue as a member of the Department for another year, through at least July 2016. At the very least, it is clear that the Department did not decide that it was not going to renew Dr. diPierro's employment contract until after he requested FMLA leave in early June 2015.

29.      Dr. diPierro's employment with Defendants terminated effective August 19, 2015, after the expiration of the required 45-day notice period.

## FIRST CAUSE OF ACTION
### (Violation of the FMLA)

30. Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

31. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA. Similarly, at all relevant times, Defendants were a "covered employer" within the meaning of the FMLA.

32. Plaintiff engaged in protected activity when he requested an FMLA-designated leave of absence beginning in July 2015.

33. Following Plaintiff's exercise of rights protected by the FMLA, Defendants retaliated against Plaintiff by terminating Plaintiff's employment with Defendants.

34. As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief.

35. Defendant's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An order directing Defendants to place Plaintiff in the position he would have

occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

  D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

  E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

  F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

  G. An award of punitive damages;

  H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

  I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: June 13, 2017

FILOSA LAW FIRM, PLLC

By: _____
    Gregory N. Filosa

111 John Street, Suite 2510
New York, NY  10038
Tel:	(212) 256-1780
Fax:	(212) 256-1781
gfilosa@filosalaw.com

COUNSEL FOR PLAINTIFF